# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

SHAUNA R. WING,                          )
                                         )
    Plaintiff                        )
                                         )
    vs.                              )   CAUSE NO. 3:21-cv-00091-PPS-MMG
                                         )
KILOLO KIJAKAZI,                         )
Acting Commissioner of the Social Security )
Administration,                          )
                                         )
    Defendant.                       )

<u>OPINION AND ORDER</u>

    Shauna R. Wing, a now 52-year-old woman, was denied Supplemental Security Income (SSI) benefits by an Administrative Law Judge who concluded that, although Wing had several severe impairments, she could nonetheless perform a range of light work. Wing claims a disability based upon her bipolar disorder; anxiety disorder; degenerative disc disease of the lumbar spine; chronic pulmonary disease; and obesity which she claims prevent her from holding a job. [Tr. 35–47, 210.][1]

    Wing challenges the ALJ's decision on numerous grounds, but I will focus my attention on the main argument that the ALJ reached a legal conclusion that was not supported by the evidence. The ALJ must consider all evidence and expert testimony when reaching a decision. I agree that the ALJ ignored significant evidence (in

---

[1] Citations to the record will be indicated as "Tr. _" and indicate the pagination found in the lower right-hand corner of the record found at DE 18.

particular, the opinion of consultative examiner Dr. Smekjal), that suggests a finding of

disability. Because the ALJ ignored this compelling evidence, and didn't provide

substantial reasoning to support his conclusion, I will **REVERSE** the ALJ's decision and

**REMAND** on this issue.

## Discussion

Let's start, as usual, with the standards governing my review of the ALJ's

decision. My role is not to determine whether Wing has a disability or not. Rather, I

only need to determine whether the ALJ applied the correct legal standards and

whether the decision is supported by the evidence. *See* 42 U.S.C. §405(g); *Shideler v.*

*Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castille v. Astrue*, 617 F.3d 923, 926 (7th Cir.

2010); *Overman v. Astrue* 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's

decision is deferential. This is because the "substantial evidence" standard is not

particularly demanding. In fact, the Supreme Court announced long ago that the

standard is even less than a preponderance-of-the-evidence standard. *Richardson v.*

*Perales,* 402 U.S. 389, 401 (1971). While I must review the evidence critically, the

substantial evidence standard is met "if a reasonable person would accept it as

adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir.

2004).

During the hearing before the ALJ, Wing testified that she is not able to work

because she is unable to sit or stand for any length of time due to her back pain, and she

suffers from anxiety in the workplace. [Tr. 35.] Her bipolar diagnosis causes her to

experience manic episodes which make it difficult for her to concentrate on one task at time. [*Id.* at 35-36.] These episodes can last 24-48 hours, and Wing claims she suffers from them every few weeks.  [*Id.* at 36.] Wing is morbidly obese; she is 5 feet 3 inches tall and weighs 300 pounds. [*Id.*] Wing stated that she receives some temporary relief from her chronic pain (the pain is reduced by about half) from injections, but due to insurance restrictions, she is only able to receive three injections a year and the injections only last four to six weeks. [*Id.* at 38.] She is on several medications for her bipolar diagnosis, pain management, vertigo, and COPD. [*Id.* at 32, 36.] Wing stated she has had a hard time keeping up with any counseling or therapy sessions because of her depression and it "hurts [her] to drive." [*Id.* at 44-45.] Also, she stopped going to physical therapy because it did not help her pain. [*Id.* at 36.]

The ALJ found that Wing had recognized impairments but that these impairments were "non-severe" which means they caused only minimal limitations in Wing's ability to perform basic work duties. [Tr. 13.] The ALJ found that Wing had the ability to perform light work as defined in 20 CFR 416.967(b) with some additional restrictions, and was therefore not entitled to Disability Insurance Benefits. [*Id.* at 15.] He found she was able to sit, stand, and/or walk for 6 hours in an 8-hour work day, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. [*Id.*] The ALJ accepted the vocational expert's recommendation that Wing would be able to perform certain occupations such as: a cleaner, a laundry folder, and a sorter. [*Id.* at 19.]

Back in April 2019, at the request of the state agency, Wing visited Dr. Smekjal for a consultative examination. [Tr. 16.] After a thorough examination, Dr. Smekjal concluded that Wing is "unable to do work related activities such as sitting, standing, walking, lifting, carrying, and handling objects due to pain and shortness of breath." [*Id.* at 411.] For reasons that are not particularly clear, the ALJ brushed aside this opinion—an opinion of the agency's own consultative examiner. It is well-established that whenever an ALJ rejects his own agency's physician's opinion, the reviewing court will apply scrutiny to such a decision and expect a compelling reason for the ALJ to do so. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) ("rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step.").

The ALJ rejected Dr. Smekjal's opinion because it was "not consistent with or supported by the record." [Tr. 18.] The ALJ went on to fault Dr. Smekjal for not providing "specifics as to his limitations and that [Wing] had fairly normal clinical findings, including intact strength and sensation (Exhibit C8F)." [*Id.*] However, Dr. Smekjal personally observed objective findings consistent with Wing's pulmonary functioning, and stated in his report that she had abnormal chest wall movement with abnormal percussion in all lung fields, and wheezing in bilateral lungs. [*Id.* at 409.] He also characterized Wing as "morbidly obese." [*Id.*] And, he observed Wing's abnormal gait and difficulty moving from a seated to standing position. [*Id.* at 410.] The ALJ, in rejecting the opinion of Dr. Smekjal, failed to discuss this compelling evidence in favor

of Wing. This is problematic because whenever a reviewing court can't discern whether the ALJ considered all of the evidence, remand is necessary. *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001).

An ALJ must consider *all* medical opinions based upon a number of factors including supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §404.1520(b), (c). Although the ALJ must consider all of these factors, he need only explain how he considered supportability and consistency. 20 C.F.R. §404.1520c(b)(2), 416.920c(b)(2); *see Mazza v. Saul,* No. 19-CV-1724, 2020 WL 6909308, at *5 (E.D. Wis. Nov. 24, 2020). The regulations recognize that "[t]he factors of supportability… and consistency… are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(a). The ALJs may, but are not required, to explain the other factors (including relationship with the client and specialization). *Id.*

In this case, the ALJ mentions the consistency factor, finding Dr. Smekjal's opinion not consistent with other things in the record. However, respectfully, it seems like the ALJ did not consider the totality of the record in evaluating the consistency of Dr. Smekjal's opinion. Moreover, the ALJ failed to explain *how* he considered the supportability of Dr. Smekjal's opinion.

Let's back up and look at how Wing's relationship with Dr. Smekjal began, and what the relationship revealed. Before visiting Dr. Smekjal, Wing visited several

different doctors for her leg pain and breathing problems. At the request of the State agency, Wing visited Dr. Smekjal in April of 2019 for a consultative examination. [Tr. 16.] After examination, Dr. Smekjal concluded that Wing had breathing abnormalities including wheezing; tenderness along the spine; "a wide based and slow gait;" and difficulty with stooping, squatting, walking "heel to toe and tandemly," and standing from a sitting position. [*Id.* at 409-10.] Dr. Smekjal opined that Wing was "unable to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects due to pain and shortness of breath." [*Id.* at 411.]

After Dr. Smekjal's visit, two state physicians reviewed Wing's file to reach their own conclusions. Neither physician examined Wing but based their conclusions on the existing evidence. On June 11, 2019, Dr. Sands opined that Wing could perform activities consistent with "light" work (as defined at 20 C.F.R. § 416.967(b)), with additional postural and environmental limitations. [Tr. 85-86.] On August 22, 2019, Dr. Evertts reached a similar conclusion that Wing could do light work with additional limitations. [*Id.* at 99-102.]

There is significant other evidence in the medical record supporting Dr. Smekjal's opinion that Wing could not perform the standing and walking requirements required for light work. For example, Wing's treating physician, Dr. Grewal, set a short term physical therapy goal for Wing to be able to stand for merely 10 minutes without needing to sit down and rest. [Tr. 692.] Likewise, there was a note made during Wing's physical therapy session in October 2019, that she could only stand for a maximum of

five minutes and fifteen seconds during physical therapy. [*Id.* at 898.]  There are also

concrete imaging results that reflect Wing's physical issues.  For example, an MRI of the

lumbar spine in June 2018 noting that Wing suffered a lifting injury 6 years ago

demonstrated "left paracentral/foraminal disk protrusion at L5-S1 which narrows the

left lateral recess and abuts and mildly posteriorly displaces the traversing the left S1

nerve root" and disk material which "abuts the exiting L5 nerve root." [*Id.* at 358.]  The

same imaging demonstrated "moderate-severe right neural foraminal narrowing at the

orifice of the neural foramina." [*Id.*]  In March of 2019, Wing visited her treating

physician, Dr. Jasveer Grewal, complaining of lower back pain with radiation down her

left leg, and he noted the MRI which demonstrated "significant left-sided disk bulge at

L5-S1 on the left side abutting left L5 nerve root." [*Id.* at 432.]  Additionally, a few

months after the consultative exam with Dr. Smekjal, pulmonary function tests revealed

"moderate obstructive lung defect. The airway obstruction is confirmed by the decrease

in flow rate at peak flow and flow at 50% and 75% of the flow volume curve." [*Id.* at

458.]

In sum, the ALJ dismissed evidence supporting Dr. Smekjal's consultative

examiner opinion, without giving an adequate reason for doing so. In other words, the

ALJ failed to discuss the supportability (or lack thereof) of Dr. Smekjal's opinion, as

required by the regulations. 20 C.F.R. §404.1520c(b)(2), 416.920c(b)(2). Here, it's

apparent the record demonstrates that Dr. Smekjal's opinions were supported by his

objective medical examinations of Wing. Dr. Smekjal personally examined Wing and

sensibly concluded that Wing was limited in her abilities—a conclusion that happens to be supported by other evidence in the medical record.

The ALJ concluded that Wing had "intact strength" but ignored Dr. Smekjal's personal observation of Wing where he found that she had a slow gait, could stoop and squat with difficulty, could walk heel to toe and tandemly with difficulty, and it was also difficult for her to get on and off the examination table and stand from a sitting position. [Tr. 410.]  A later examination also evidences reduced strength of the bilateral hips, and an abnormal "trendlenberg" gait. [*Id.* at 691.] Further, the ALJ ignored compelling evidence most consistent with Dr. Smekjal's finding that Wing could not perform the standing and walking requirements of light work: that her treating physician, Dr. Grewal, set a physical therapy goal to be able to stand for ten minutes without needing to sit down and rest. [Tr. 692.] At no point in the ALJ's decision was the fact that Wing could only stand for a maximum of five minutes and fifteen seconds during physical therapy mentioned. [*Id.* at 898.] Moreover, this was all consistent with Wing's testimony at the ALJ hearing that "[i]t is impossible for me to sit or stand for any length of time due to my back." [Tr. 35.] The ALJ "may not simply ignore evidence," *Myles v. Astrue*, 582 F.3d. 672, 676 (7th Cir. 2009), ignore "entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (internal citations omitted), or "cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

In dismissing Dr. Smekjal's opinion "as not consistent with or supported by the record," the ALJ gave me no clear indication of whether or not he actually considered entire lines of evidence contrary to his conclusion. Whenever the court is unable to discern whether the ALJ correctly considered the record with the appropriate evidence, remand is necessary. *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001).

Finally, I note that the ALJ exacerbated the error committed when he rejected the opinion of his own agency's consultative examiner by relying on the opinions of the agency's reviewing physicians who had no knowledge of Wing's lumbar spine etiology. It appears that the reviewing physicians, who did not examine Wing, did not actually see Wing's MRI even though the MRI existed in the record at the time the physicians reviewed Wing's case. [Tr. 82, 97.] Wing argues that if the agency's own physicians had been aware of the etiology and considered the MRI, they could have concluded similar to Dr. Smekjal, that Wing could not perform "light" work.  This is another issue for the ALJ to consider on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED:  August 11, 2022.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT